IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Chad Douglas,                                              :

             Petitioner            :        Case No. 2:10-cv-00547

  v.                                                        :        Judge Smith

Warden, Warren Correctional            :        Magistrate Judge Abel
Institution,
                                                           :

             Respondent

                                                           :

**REPORT AND RECOMMENDATION**

Petitioner Chad Douglas, a state prisoner, brings this action for a writ of habeas

corpus under 28 U.S.C. § 2254. On December 19,2011, this Court dismissed all of

Petitioner's claims with the exception of his claim that he was denied effective

assistance of counsel because his attorney failed to file a motion to suppress his

statements to police or challenge his sentence.

Respondent has provided supplemental briefing on these issues as well as a copy

of Douglas's videotaped statement to police. For the reasons that follow, the Magistrate

Judge RECOMMENDS that this action be DISMISSED.

**FACTS and PROCEDURAL HISTORY**

The facts and procedural history of this case are detailed in the November 17,

2011 Report and Recommendation (pp. 2-8, doc. 10, PageID 527-33). A summary of the

procedural history and of the facts as set forth by the Ohio Tenth District Court of

1

Appeals are repeated here as follows:

The Franklin County Grand Jury indicted appellant on one count of rape, three counts of complicity to rape, and three counts of gross sexual imposition. The charges stem from appellant causing three boys, G.P., J.B., and C.B., to engage in sexual contact with a girl, K.K., who was less than 13 years old. The indictment alleged that the sexual contact occurred "on or about" April 16, 2007.

Appellant pleaded not guilty, and a bench trial ensued in January 2009 after appellant waived his right to a jury trial. Plaintiff-appellee, the state of Ohio ("appellee"), called G.P. to testify. G.P. was seven years old, and the court held a hearing to determine whether G.P. was competent to testify. G.P. said that the truth means "you don't lie." (Tr. 15.) He knew that lying is wrong. He understood that he is not supposed to lie in court, and he knew that he would get in trouble for lying in court. G.P. also stated that he was going to tell the truth about incidents concerning appellant. He recalled the Christmas presents he received a few weeks earlier. He also mentioned his grade in school and his teacher. Over defense counsel's objection, the court found G.P. competent to testify.

G.P. testified as follows. G.P. and his brother, C.B ., visited cousins K.K. and J.B. on a day that appellant was present. The children went into a closet. G.P., J.B., and C.B. licked K.K. in her vaginal area. Appellant, who was on a nearby bed, told G.P. to perform the sexual act. Appellant did not go into the closet and did not touch K.K., and appellant did not show G.P. how to touch K.K.

Appellee called C.B. to testify. C.B. was nine years old, and the court held a hearing to determine whether C.B. was competent to testify. C.B. said that a lie is "[w]here you don't tell the truth." (Tr. 57-58.) C.B. stated that he would get in trouble for lying. He said that it is good to tell the truth and that he will try to tell the truth. C.B. knew he was born on November 11, but he did not know the year. C.B. recalled a Christmas present he received a few weeks prior. C.B. recalled a present he received on his recent birthday. He could not remember what Christmas or birthday presents he received two years ago. He mentioned his grade in school, his teacher, and favorite subject. He revealed his favorite professional and college football teams and his favorite professional football player. C.B. noted whether the teams won their last games, and he knew the name of the opponent in the last college game. The court found C.B. competent to

2

testify, and defense counsel did not object.

C.B. testified as follows. C.B. and his brother, G.P ., visited cousins K.K. and J.B. on a day that appellant was present two years ago, Appellant and the children were in J.B.'s room. Appellant was watching television. There was a closet in J.B.'s room, and K.K. and G.P. went into the closet. C.B. did not go into the closet. C.B. saw nothing happen to K.K. while he was in J.B.'s room. On cross-examination, C.B. said that he did not remember previously speaking to someone at a hospital about G.P. watching sexually explicit movies. C.B also said that G.P. started some fires over two years ago, before appellant stayed with Stacie M., who is J.B. and K.K.'s mother.

Appellee called J.B. to testify. J.B. was eight years old, and the court held a hearing to determine whether J.B. was competent to testify. J.B. said that a lie "ain't the truth and if you're lying, then it is bad." (Tr. 82.) J.B. said people get in trouble for lying. He knew it is important to tell the truth, and he said he was going to try to tell the truth in court. He revealed a Christmas present he received a few weeks earlier. J.B. stated his birthday, school, teacher, and favorite subject. The court found J.B. competent to testify, and defense counsel did not object.

J.B. testified as follows. G.P. and C.B. visited K.K. and J.B. on a day that appellant was present. Appellant told the children to get into a closet, and "he put us in there." (Tr. 95.) Appellant told G.P., J.B., and C.B. to get on top of K.K. In an angry voice, appellant also told the boys to pull down K.K.'s pants. One of the boys pulled down K.K.'s pants, but J.B. could not remember what happened after that. K.K. did not do anything to him, G.P. or C.B. On cross-examination, J.B. said that he does not have a good memory of what occurred two years ago when appellant was at his house, and J.B. denied seeing sexually explicit movies or pictures.

J.B. and K.K.'s mother, Stacie M., testified as follows. Appellant lived with Stacie, J.B., and K.K. for two weeks. G.P. and C.B. visited on a day that appellant was at her house. At about 3:30 or 4:00 p.m., K.K. told her that the three boys had done something to her; K.K. did not mention appellant. This occurred "[c]lose to the fall." (Tr. 122.) Stacie took J.B. and K.K. to the hospital on the date of the disclosure and to the Center for Child and Family Advocacy ("Advocacy Center") a few days later. K .K. was born on July 14, 2004.

Lois Stepney, a medical forensic interviewer at the Advocacy Center, testified as follows. Stepney interviewed J.B. before his medical exam. Stepney said the interview took place on April 20, 2007. Stepney interviewed J.B. with no one else present in the room. Stepney said the purpose of her interview is for medical diagnosis and treatment; she discusses her interview with the medical examiner, and the interview guides the medical examination. Stacie told Stepney that the sex abuse was disclosed to her the Saturday before J.B.'s interview. Defense counsel stipulated to the admissibility of the video-recording of the interview, and the video revealed the following. Stepney told J.B. at the beginning of his interview that he would undergo a medical examination. J.B. first indicated that he did not see anyone engage in sexual touching. Stepney left the room and returned to ask J.B. about appellant. J.B. said that appellant yelled and told G.P. and C.B. to lick K.K. and that those boys did so.

Paula Samms, a medical forensic interviewer at the Advocacy Center, also testified. Samms separately interviewed G.P. and C.B. on May 4, 2007. The children underwent medical examinations after the interviews. Samms discusses her interviews with the medical examiner because her interviews guide the medical examination. Samms interviews children with no one else present in the room, but the medical examiner, police, and prosecutors can watch the interview. G.P. and C.B.'s interviews were video-recorded. Defense counsel stipulated to the admissibility of the videos, and the videos revealed the following.

Samms told G.P. at the beginning of his interview that he would undergo a medical examination. G.P. stated that appellant told him and the other two boys to lick K.K. and that appellant licked K.K. first. G.P. denied seeing sexually explicit movies or photographs.

Samms told C.B. at the beginning of his interview that he would undergo a medical examination. C.B. stated that he saw G.P. lick K.K. At one point, C.B. said that J.B. licked K.K., but he later vacillated on whether he actually saw J.B. do this. C.B. first said that the incident was G.P.'s idea, but later said that appellant told J.B. and G.P. in a mean voice to do it. C.B. said that he did not do anything to K.K. C.B. said that he and G.P. had seen a sexually explicit movie.

Appellee called Detective David Phillips to testify. Phillips interviewed appellant on July 2, 2007. Phillips identified a waiver form that appellant

4

signed. The form disclosed appellant's *Miranda* rights and stated: "I understand what my rights are. I do not want a lawyer at this time. I am willing to answer questions. I understand and know what I am doing. No promises or threats have been made to me and no pressure of any kind has been used against me." (State's Exhibit 3.) The form indicated that appellant had had no alcohol or drugs in the last 12 to 24 hours. The interview was video-recorded.

The prosecution played the video in court, and defense counsel did not object. The video revealed the following. Phillips told appellant that he was accused of inappropriate sexual activity. Appellant said that he learned of the accusations in early April 2007. Appellant had recently stayed at Stacie's house, but he denied the allegations. Phillips said that he has interviewed people, unlike appellant, who deserve to go to jail for the rest of their lives or receive worse treatment. Phillips mentioned that people are dealt with severely if they do not take responsibility for their actions. Phillips recalled that he had spoken previously with appellant about a prior incident. Phillips said that appellant was treated fairly after he made admissions about the prior incident. Phillips reminded appellant that counseling had been provided to him previously, and appellant alluded to his previously being on probation. Phillips said that appellant could benefit from further help. Phillips said that he had medical and physical evidence to prove the allegations against appellant. Appellant ultimately admitted that G.P., J.B., and C.B. licked K.K. Appellant first denied involvement, but ultimately admitted that he told the boys to do it. Appellant used his fingers and mouth to demonstrate to Phillips how he showed the boys what to do, but said that he did not touch her. Appellant said he was in the closet with the children. Appellant first said K.K. did not sexually touch the boys, but later said that she sexually touched two of the boys. Appellant expressed regret and desired counseling.

On cross-examination, Phillips admitted that his statement about having evidence against appellant was false. Phillips also recalled learning "something about arson being related to sexual abuse in some manner." (Tr. 176.)

The prosecution moved to amend the indictment to state that appellant committed the sex offenses between April 1 and April 15, 2007. The defense objected. The court overruled the objection and allowed the amendment. The prosecution rested its case. Appellant moved to dismiss the charges pursuant to Crim. R. 29. The trial court denied the motion.

Detective Terri Davis testified as follows on appellant's behalf. Davis first met Stacie on April 15,2007, at the hospital. Davis believed that the sex abuse occurred two or three days before April 15. Police concentrated on appellant as the perpetrator beginning on April 15.

Appellant testified as follows on his own behalf. Appellant has a learning disability, but he can read and write. Appellant understood his right to remain silent and to have an attorney when he talked to Phillips. Appellant voluntarily signed the Miranda rights waiver. Appellant stayed with Stacie for a week. He denied telling G.P., J.B., and C.B. to sexually touch K.K. and denied demonstrating anything to the boys. Appellant made statements to Phillips because he thought he would "just get counseling" if he told Phillips "what he wanted to hear." (Tr. 219,225.) On cross-examination, appellant admitted that, while incarcerated, he wrote a letter dated August 22, 2007. In the letter, appellant admits to telling G.P., J.B., and C.B. to sexually touch K.K. "sometime in the end of March." (State's Exhibit 6.) Appellant testified that other inmates threatened him into writing the letter. The trial court asked how the prosecution obtained the letter. The prosecution said that an inmate forwarded the letter and that "[n]othing was offered * * * for acquisition of this document." (Tr. 241.) The trial court admitted the letter as impeachment evidence. Defense counsel objected.

Defense counsel moved for the admission of a psychiatric evaluation of appellant. The psychologist concluded that appellant was competent to stand trial and is neither mentally ill nor mentally disabled. He said that appellant "was able to demonstrate the capability to understand concepts and principles, and to compare the hypothetical outcomes of various options to make a decision that is likely to be in his best interest." (Defense Exhibit A.) The psychologist cautioned that appellant has "Low Average intellectual capabilities" and "may have some difficulty when information is presented to him in complex forms using sophisticated terminology." (Defense Exhibit A.) He indicated, however, that "if explained to him in more simplified terms, he has no difficulty grasping the underlying concepts, facts, and considering the options." (Defense Exhibit A.) He noted that appellant's "passive, compliant style may cause him not to ask for assistance when, in fact, he could benefit from additional explanations." (Defense Exhibit A.) The trial court admitted the document into evidence.

Defense counsel raised another Crim.R. 29 acquittal motion, but the court

denied the motion. After closing arguments, the court found appellant not guilty of rape and complicity to rape. The court found appellant *guilty* of the gross sexual imposition counts. The court labeled appellant a Tier E sex offender and imposed the maximum sentence of three consecutive five-year prison terms. Defense counsel did not object to the sex offender classification or the sentence.

*State v. Douglas*, 2009 WL 4861413, at *l-5 (Ohio App. 10th Dist Dec. 17, 2009). On

December 17, 2009, the Ohio Court of Appeals affirmed the judgment of the trial court,

*see Id.,* and on May 5, 2010, the Ohio Supreme Court dismissed Petitioner's subsequent

appeal. *State* v. *Douglas,* 125 Ohio St.3d 1414 (2009). On June 14,2010, Petitioner filed the

instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

Petitioner's claims of the denial of effective assistance of counsel based on

defense counsel's failure to file a motion to suppress Petitioner's statements to police,

and the failure to challenge his sentence are the sole claims remaining for this Court's

consideration.

## INEFFECTIVE ASSISTANCE OF COUNSEL

The state appellate court rejected Petitioner's claims of ineffective assistance of

counsel in relevant part as follows:

[A]ppellant argues that his statements to Phillips . . . were inadmissible because they were involuntary. We disagree.

The United States Supreme Court has held that any criminal trial use against a defendant of his involuntary statement is a denial of due process of law. *Mincey v. Arizona* (1978), 437 U.S. 385; 398, 98 S.Ct. 2408, 2416, 57 L.Ed.2d 290. Coercive police activity triggers the constitutional protections against involuntary statements. *See Colorado v. Connelly* (1986), 479 U.S. 157,167,107 S.Ct 515, 522, 93 L.Ed.2d 473. Appellant testified that inmates coerced him into writing the August 2007 letter, and the record is devoid

7

of evidence that the inmates acted at the request of the police or prosecution. Therefore, constitutional protections against involuntary statements do not apply to appellant's August 2007 letter, and the trial court did not commit plain error by allowing the prosecution to use the letter at trial.

Appellant's statements to Phillips stem from police activity, and we address appellant's argument that those statements were involuntary. Appellant did not seek to suppress the statements and, therefore, forfeited all but plain error. *See Campbell 3144,*630N.E.2d339. The voluntariness of a defendant's statement is determined from the totality of the circumstances. *State v. Prazier,* 115 Ohio St.Sd 139, 873 N.E.2d 1263, 2007-0hio-5048, ¶ 112 ("*Frazier I*"). A defendant's confession is involuntary if it is the product of coercive police activity that overcomes the defendant's will and critically impairs his capacity for self-determination. *State v. Copley,* 10th Dist No. 04AP-1128, 2006-Ohio-2737, ¶ 30. We consider the following: the age, mentality, and prior criminal experience of the defendant; the length, intensity, and frequency of the questioning; the presence or absence of physical deprivation or mistreatment; and the existence of threat or inducement. *Frazier I* at ¶ 112.

Appellant notes that Phillips misled him about the evidence police obtained. This conduct did not render appellant's statement involuntary. A defendant's will is not overborne simply because he is led to believe that the government's knowledge of his guilt is greater than it actually is. *State v. Bays,* 87 Ohio St.3d 15, 23, 716 N.E.2d 1126,1999-Ohio-216.

Appellant argues that Phillips rendered his confession involuntary by suggesting that he would receive counseling and lenient treatment if he admitted to the sex offenses. Assurances that a defendant's cooperation will be considered or that a confession will be helpful do not invalidate a confession, however. *See Copley* at ¶ 32.

Appellant argues that his low intelligence and learning disability rendered his confession involuntary. The record does not establish that appellant's mental condition led to an involuntary confession. Although the psychologist who evaluated appellant recognized that appellant has difficulty with complex information and that his "passive, compliant style" may prevent him from seeking needed assistance, he also concluded that appellant has the "capability to understand concepts and principles" and "make a decision that is likely to be in his best interest." (Defense Exhibit

8

A.) Furthermore, the psychologist concluded that appellant is neither mentally ill nor mentally disabled.

In addition, the totality of the circumstances establishes that appellant's will was not overborne and his capacity for self-determination was not critically impaired when he spoke with Phillips. Appellant testified that he understood his right to remain silent and to have an attorney when he talked to Phillips. Appellant testified that he voluntarily waived those rights. Phillips giving appellant *Miranda* warnings is another factor demonstrating the voluntariness of the confession. *See State v. Barker* (1978), 53 Ohio St.2d 135,141, fn 3, 372 N.E. 2d 1324. When appellant agreed to talk to Phillips, he signed a form verifying the voluntariness of his actions. Appellant's videotaped confession shows that he comprehended Phillips' questions and was able to express his thoughts and recall his actions in a rational manner. Lastly, appellant was not new to the police interview process; Phillips had previously interviewed appellant on a different matter.

We conclude that appellant voluntarily confessed to Phillips and that the trial court did not commit plain error by admitting the confession into evidence. Having also rejected appellant's arguments against the August 2007 letter, we overrule appellant's first assignment of error.

. . .

[A]ppellant argues that he received ineffective assistance of counsel. We disagree.

The United States Supreme Court established a two-pronged test for ineffective assistance of counsel. *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct 2052, 80 L.Ed.2d 674. First, the defendant must show that counsel's performance was outside the range of professionally competent assistance and, therefore, deficient. *Id* at 687, 104 S.Ct. at 2064. Second, the defendant must show that counsel's deficient performance prejudiced the defense and deprived the defendant of a fair trial. *Id* A defendant establishes prejudice if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694,104 S.Ct at 2068.

Appellant argues that defense counsel was ineffective for not filing motions to suppress his statements to police and his August 2007 letter. Because we rejected appellant's constitutional challenges regarding the

9

letter and his statements, we conclude that defense counsel's failure to file motions to suppress did not prejudice appellant. Therefore, we conclude that defense counsel was not ineffective for failing to file the motions.

*State v. Douglas,* 2009 WL 4861413, at *13-15.

The factual findings of the state appellate court are presumed to be correct.

The factual findings of the state appellate court are presumed to be correct. In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(l). Further, a federal habeas court may not grant relief unless the state court's decision was contrary to or an unreasonable application of clearly established federal law, or based on an unreasonable determination of the facts in light of the evidence that was presented.

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d). "The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable . . . an unreasonable application is different from an incorrect one." *Bell v. Cone,* 535 U.S. at 694. To obtain habeas corpus relief, a petitioner must show that the state court's decision was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any

10

possibility for fairminded disagreement." *Bobby v. Dixon,* - S.Ct -, 2011 WL 5299458, at *1

(Nov. 7, 201l)(quoting *Harrington v. Richter,* 562 U.S.- , 131 S.Ct 770, 786-87 (2011). This

bar is "difficult to meet" because "habeas corpus is a 'guard against extreme malfunctions in

the state criminal justice systems,₅ not a substitute for ordinary error correction through

appeal." *Harrington v.Richter,* 131 S.Ct at 786 (quoting *Jackson v. Virginia*, 443 U.S. 307,

332, n. 5 (1979) (Stevens, 1, concurring in judgment)). In short, "[a] state court's

determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded

jurists could disagree' on the correctness of the state court's decision." *Id.* (quoting

*Yarborough v. Alvarado,* 541 U.S. 652, 664 (2004)). Petitioner has failed to meet this

standard here.

Petitioner asserts that his statement to police was involuntary and coerced because

police promised him counseling in lieu of jail if he agreed to speak with them, because he is

learning disabled, and because police mislead him regarding the evidence against him.

Additionally, Petitioner asserts that the August 2007 letter he wrote while incarcerated is

inadmissible, because he wrote the letter while under the threat of physical violence from

other inmates. *See Exhibit 5 to Return of Writ.*

The Fifth Amendment provides that "[n]o person . . . shall be compelled in any

criminal case to be a witness against himself." The privilege against self-incrimination

prohibits the government from using any statement against a criminal defendant "stemming

from custodial interrogation of the defendant unless it demonstrates the use of procedural

safeguards effective to secure the privilege against self-incrimination." *Miranda v. Arizona,*

11

384 U.S. at 444. "[B]y custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Id.* A person being questioned in a custodial interrogation must be warned "that he has the right to remain silent, that any statement he does make may be used as evidence against him, and that he has the right to the presence of an attorney, either retained or appointed." *Id.*

For a confession to be admissible, it " 'must be free and voluntary; that is, must not be extracted by any sort of threats or violence, nor obtained by any direct or implied promises, however slight, nor by the exertion of any improper influence.*" Bram v. United States,* 168 U.S. 532,542-43 (1897). For example, "threats to arrest members of a suspect's family may cause a confession to be involuntary." *Id.* (citing *United States v. Finch,* 998 F.2d 349, 355-56 (6th Cir. 1993) (internal citation omitted)). In other words, police cannot constitutionally extort a confession from an accused by means of coercive activity. *McCall v. Button,* 863 F.3d 454, 459 (6th Cir.1988). "The ultimate question in coerced confession cases is whether the confession was voluntary, or in other words, 'the product of an essentially free and unconstrained choice by its maker.'" *Mason* v. *Brunsman,* 2009 WL 21 69035, at *26 (S.D. Ohio July 16, 2009)(quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 225 (1973)). If police act in an objectively coercive manner, the court examines the petitioner's "subjective state of mind" to determine whether that coercion "was sufficient to- overbear the will of the accused. " *Id.* The police misconduct must be a "crucial motivating factor" behind the petitioner's

12

confession. *Id.* "[P]romises of leniency may be coercive if they are broken or illusory."

*United States v. Johnson,* 351 F.3d 254, 262 (6th Cir. 2003).

> Courts must consider the totality of the circumstances in determining the voluntariness of coerced statements, including: (1) whether there was police coercion; (2) the length of the interrogation; (3) the location of the interrogation; (4) the continuity of the interrogation;  (5) the suspect's maturity; (6) the suspect's education; (7) the suspect's physical condition and mental health; and, (8) whether the suspect was advised of his or her *Miranda* rights.

*Mason v. Brunsman,* 2009 WL, at *26 (citing *Withrow v. Williams,* 507 U.S. 680, 693-94

(1993)).

The videotape of Petitioner Douglas's June 20, 2007 interview with Officer Phillips

indicates that the officer had apparently interviewed him four years ago when Douglas served

a term of probation. Officer Phillips told Douglas to "make no mistake," as long as he was

honest things would go well for him. Office Phillips read Douglas rights under *Miranda v. v.*

*Arizona,* 384 U.S. 436 (1966). Douglas indicated that he understood, then read those

rights again himself and signed the waiver. Phillips told Douglas repeatedly that he

could stop talking any time. Douglas indicated that he understood and agreed to speak

to him.

Douglas stated that he had been homeless since June and had no idea regarding

the allegations against him aside from being told Stacie told his mother that he had

touched her daughter. Stacie said this happened on a day he was staying in her home.

He had stayed at Stacie's house for about one week. He stayed mainly in the living

room and had no problem with Stacie or her children, J.B. and K.K.

13

Douglas denied having any involvement with drugs or alcohol since high school. He had no criminal record as an adult. Phillips advised Douglas the biggest mistake people made was being dishonest with police about things that did not matter. If Douglas was not honest about the little things (like his drug usage) it hurt his credibility when big questions were asked. In his experience, most of the time people did not tell the truth because they were ashamed, embarrassed or thought they were going to get into trouble. In this situation, however, that would be the last thing Douglas wanted to do.

Phillips told Douglas the children stated a suggestion was made to "lick Kaylee's privates." All of the boys acknowledged participating in that act, and two of the boys said that Kaylee licked them at some point. Douglas denied any recollection of these events. If they did do it, he said, he was not in the room at the time. Phillips reminded Douglas of the importance of not getting caught up on the easy stuff (like Douglas's presence in the room) as none of the children claimed the use of force, threats, or that any kind of an assault had taken place. But all of the children were very clear about Douglas being present.

Office Phillips advised Douglas that it was important that, if he was present in the room, inside or outside of the closet, it was important to be honest. Phillips told Douglas to make no mistake, the file on the case was thick, much work had been done. All of the children had been to the hospital, had DNA swabs done, medical and forensic testing and interviews. Phillips did not believe anything of a violent nature had

14

occurred, but children have a tendency to exaggerate and blow things out of proportion, and that might have taken place here. Phillips told Douglas he did not want to get off to a bad start with the easy stuff. All of the children said he was in the room–it was not a huge issue–although he should have told someone if he had seen these activities. All the children were clear about Douglas being in the room. Phillips urged Douglas to think about it and reflect back to the date at issue.

Douglas staid that from what he remembered, he was watching television while the children were in a closed closet in Kaylee and Jacob's bedroom. Whatever they were doing he did not see. The closet door was closed. He denied hearing any noise or what was being said. They were playing with toys. When they exited the closet, nothing was said to him.

Phillips told Douglas that all of the children had been to the hospital and had medical examinations. Swabs had been taken; everything was done the right way. The children had quickly disclosed what happened.

Phillips again indicated that people failed to be truthful when they were ashamed, embarrassed or thought they were going to get into trouble. This was not a black and white issue, there were grey spots. The most important thing was that they could find out what had happened and take steps to make sure it did not happen again. Phillips reminded Douglas the last time he had been in trouble with the police, he was honest and saw that as a result, he was treated fairly. In Officer Phillip's experience, people who acknowledged their mistakes and took responsibility for their actions were

15

treated far more fairly than those who lied, hid, and evaded responsibility and later got hammered in court. No one can tolerate people who don't take responsibility for their actions.

The process was for Douglas, not for the police, because they already had the information, the file was thick. This was about making an assessment to see if Douglas was the type of person who would even benefit from any help. Because the only people who benefitted from help were those who wanted help. Three or four years ago, Phillips sensed that Douglas was that type of person. Douglas had admitted having a problem, and he was dealt with fairly. Officer had talked to people who had done things who deserved to go to jail for the rest of their lives or worse. Douglas was not one of those. But Phillips had worked long enough to be able to tell when some one was not being honest. Petitioner was not being honest. He again indicated they had DNA swabs and evidence against Douglas, but Phillips did not want it to go that far. He did not want things to get to the point where a mistake or lapse in judgment ended up costing Douglas a lot more than it should have. He could not and would not accept dishonesty.

Phillips said to Douglas, You remember what happened. Whether you chose to be honest with me is up to you. The children were not lying about him being in the closet with them. They would prove that through medical and physical evidence. The issue was whether Douglas would take responsibility and whether he regretted any mistake. Nothing the children were saying was horrible.

16

Douglas asked if the children were saying he was in the closet. Phillips said, Yes. They said that everybody took a turn licking Kaylee. Douglas denied doing anything. He said the boys licked her. He was watching television. The children went into the closet. He went to see what they were doing. All of the boys took turns. He was only there for a minute, then he left. He did not see Kaylee acting upset.

Phillips told Douglas that the other issue that needed to be addressed was that all of the boys were saying he showed them how to lick Kaylee. In the overall scheme of things, if that was the extent of what had happened, it was not bad in the area in which he worked. But it was not the type of thing a child would do on their own.

Phillips asked Douglas if the last time he had gone to counseling had helped him. He responded that it had. Phillips said he knew counseling was good for people with problems. He knew from Douglas's history that he had some issues and that he had taken steps to clean himself up and taken responsibility for his actions. Until Douglas was honest with himself, he would be susceptible to repeating this kind of behavior.

Phillips said it looked like what had happened was goofing around and experimentation. If things had gone further, if there had been penetration, it would be a whole different ball game. Phillips did not think things had gone that far or that there was evidence to suggest that things had gone that far. But all of the children said Douglas showed them. He needed to tell Phillips the truth so that they could move forward. Phillips wanted to know what was going through Douglas's mind, because intent meant everything in law. A person who killed somebody out of passion did not

17

commit the same crime as some one who committed premeditated murder. Phillips could not understand Douglas's intent until he was honest. He needed him to be honest about what had happened so that they could come to the correct conclusion. If that was as far as it went, that was good. Not acceptable, but it could be worse. They did not want to let it get worse.

Phillips asked Douglas whose idea it was. Douglas said he thought it was Chase's idea. He denied licking Kaylee. Phillips said, that at seven years old it was not Chase's idea to lick Kaylee. Simple testing would show that the boys had all licked Kaylee. He was guessing that by the conclusion of the investigation, he would learn that Douglas probably had done so as well He knew Douglas did not hurt Kaylee. He did not know if it had been planned, however, or a spur of the moment decision. By not being truthful, Douglas was not helping himself Ultimately, Douglas made incriminating statements against himself.

"The issue of 'voluntariness₅ of a confession is a legal question for a federal court, not a factual question on which state conclusion is presumed to be correct." *Bays v. Warden, Ohio State Penitentiary*, 2012 WL 553092, at *28 (S.D. Ohio Feb. 21, 2012)(citing *Miller v. Fenton*, 474 U.S. 104,110 (1985)). Police misrepresentation of the evidence against a defendant is insufficient to make an otherwise voluntary confession inadmissible. *Id*. (citing *Frazier v. Cupp*, 394 U.S. 731, 739 (1969).

Here the issue is whether Petitioner was denied the effective assistance of counsel when his attorney failed to file a motion to suppress the confession. While

Officer Phillips clearly misled Douglas about the evidence amassed against him and arguably oversold the leniency he might expect by truthfully telling what happened, the Ohio Court of Appeals did not err in finding that the confession was voluntary. Given that conclusion, Petitioner's ineffective assistance of counsel claim fails. I also note that setting the statement to Phillips aside, the evidence against Douglas was very substantial. He was present in the home when the crimes occurred. The victims' corroborated each other's testimony, and Douglas wrote a letter from jail confessing to the crime. Finally, during the initial stages of questioning, during which Petitioner can make no plausible argument that his statements were coerced, he admitted that he was in the room with the children, who he said were playing in the closet. He implausibly denied knowing what they were doing.

Petitioner additionally asserts he was denied effective assistance of counsel because his attorney failed to object to imposition of his sentence his classification as a sexual predator as applied under Ohio's Senate Bill 10 (Ohio's Adam Walsh Act), effective July 1, 2007, as violating ex post facto provisions of the state and federal constitution, and for failing to object to the trial court's imposition of maximum consecutive sentences. The state appellate court rejected this claim in relevant part as follows:

> Appellant's fifth and sixth assignments of error concern his Tier II sex offender classification. The trial court made this classification pursuant to the Adam Walsh Act, implemented under S.B. 10. Appellant argues that retroactive application of this law violates the Ex Post Facto Clause of the United States Constitution and the Ohio Constitution's ban on retroactive laws. Appellant also argues that S.B.

10's residency restrictions are unconstitutional. Appellant did not raise these issues in the trial court. A constitutional issue not raised at trial "need not be heard for the first time on appeal." *State v. Awan* (1986), 22 Ohio St.3d 120, 489 N.E.2d 277, syllabus. Accord *State v. Franklin,* 10th Dist. No. 08AP–900, 2009–Ohio–2664, ¶ 21, 182 Ohio App.3d 410, 912 N.E.2d 1197. We decline to consider appellant's constitutional arguments because he failed to raise them in the trial court.[FN1] Accordingly, we overrule appellant's fifth and sixth assignments of error.

FN1. This court has held that a defendant does not have standing to challenge S.B. 10 on direct appeal. See *State v. Christian,* 10th Dist. No. 08AP–170, 2008–Ohio–6304, ¶ 7–10, and *State v. Conkel,* 10th Dist. No. 08AP–845, 2009–Ohio–2852, ¶ 8. We need not reach the issue of standing because appellant did not preserve the S.B. 10 constitutional challenges for appeal. See *Franklin* at ¶ 20–21 (declining to consider S.B. 10 constitutional challenges not raised in the trial court). See also *State v. Richey,* 10th Dist. No. 09AP–36, 2009–Ohio–4487, ¶ 12 (" *Richey I* ") (same).

In his seventh assignment of error, appellant argues that he received ineffective assistance of counsel. We disagree.

. . .

Appellant's fifth and sixth assignments of error concern his Tier II sex offender classification. The trial court made this classification pursuant to the Adam Walsh Act, implemented under S.B. 10. Appellant argues that retroactive application of this law violates the Ex Post Facto Clause of the United States Constitution and the Ohio Constitution's ban on retroactive laws. Appellant also argues that S.B. 10's residency restrictions are unconstitutional. Appellant did not raise these issues in the trial court. A constitutional issue not raised at trial "need not be heard for the first time on appeal." *State v. Awan* (1986), 22 Ohio St.3d 120, 489 N.E.2d 277, syllabus. Accord *State v. Franklin,* 10th Dist. No. 08AP–900, 2009–Ohio–2664, ¶ 21, 182 Ohio App.3d 410, 912 N.E.2d 1197. We decline to consider appellant's constitutional arguments because he failed to raise them in the trial court.[FN1] Accordingly, we overrule appellant's fifth and sixth assignments of error.

FN1. This court has held that a defendant does not have standing to challenge S.B. 10 on direct appeal. See *State v. Christian,* 10th Dist.

20

No. 08AP–170, 2008–Ohio–6304, ¶ 7–10, and *State v. Conkel,* 10th Dist. No. 08AP–845, 2009–Ohio–2852, ¶ 8. We need not reach the issue of standing because appellant did not preserve the S.B. 10 constitutional challenges for appeal. See *Franklin* at ¶ 20–21 (declining to consider S.B. 10 constitutional challenges not raised in the trial court). See also *State v. Richey,* 10th Dist. No. 09AP–36, 2009–Ohio–4487, ¶ 12 (" *Richey I* ") (same).

In his seventh assignment of error, appellant argues that he received ineffective assistance of counsel. We disagree.

The United States Supreme Court established a two-pronged test for ineffective assistance of counsel. *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. First, the defendant must show that counsel's performance was outside the range of professionally competent assistance and, therefore, deficient. *Id.* at 687, 104 S.Ct. at 2064. Second, the defendant must show that counsel's deficient performance prejudiced the defense and deprived the defendant of a fair trial. *Id.* A defendant establishes prejudice if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. at 2068.

Appellant argues that defense counsel was ineffective for not filing motions to suppress his statements to police and his August 2007 letter. Because we rejected appellant's constitutional challenges regarding the letter and his statements, we conclude that defense counsel's failure to file motions to suppress did not prejudice appellant. Therefore, we conclude that defense counsel was not ineffective for failing to file the motions.

Appellant argues that defense counsel was ineffective for not objecting to J.B. and C.B.'s competence to testify. It was within the realm of reasonable trial strategy for defense counsel not to raise the competence objections and to allow these boys to testify in order for the trial court, as trier of fact, to hear (1) C.B.'s failure to implicate appellant during his testimony, and (2) J.B. and C.B.'s conflicting testimonies. See *State v. Brown,* 5th Dist. No.2007 CA 15, 2008–Ohio–3118, ¶ 55. Accordingly, we

conclude that defense counsel was not ineffective for failing to object to J.B. and C.B.'s competence to testify.

Appellant argues that defense counsel was ineffective for stipulating to the admission of the boys' Advocacy Center interviews. Appellant claims that the interviews constitute inadmissible hearsay. Evid.R. 803(4) provides an exception to the rule against the admissibility of hearsay and allows the admission of statements made for medical diagnosis or treatment. We have repeatedly applied Evid.R. 803(4) to uphold the admission of children's statements to Advocacy Center personnel. See, e.g., *State v. J.G.,* 10th Dist. No. 08AP–921, 2009–Ohio–2857, ¶ 15; *State v. Arnold,* 10th Dist. No. 07AP–789, 2008–Ohio–3471, ¶ 35–39; *State v. Jordan,* 10th Dist. No. 06AP–96, 2006–Ohio–6224, ¶ 17–21; *State v. Edinger,* 10th Dist. No. 05AP–31, 2006–Ohio–1527, ¶ 53–64. The statements of G.P., J.B., and C.B. are consistent with the statements at issue in those cases. Stepney and Samms informed the boys at the beginning of their interviews that they were going to undergo medical examinations, and Stepney and Samms testified that the boys were medically examined. Stepney and Samms also indicated that their interviews guided the medical examinations and were performed for medical purposes and diagnosis. Accordingly, the statements of G.P., J.B., and C.B. at the Advocacy Center were admissible under Evid.R. 803(4). An objection to the admissibility of the boys' interviews would have been futile, and we conclude that defense counsel did not render ineffective assistance by stipulating to their admissibility.

Appellant argues that defense counsel was ineffective for not objecting to the sentence that the trial court imposed. Appellant contends that his sentence contravenes R.C. 2929 .11(B), which requires that a sentence be consistent with that imposed for similar crimes committed by similar offenders. The trial court stated the following in its sentencing entry: "The Court has considered the purposes and principles of sentencing set forth in R.C. 2929.11 and the factors set forth in R.C. 2929.12. In addition, the Court has weighed the factors as set forth in the applicable provisions of R.C. 2929.13 and R.C. 2929.14." This statement establishes that the trial court fulfilled its requirement under R.C. 2929.11(B). See *Franklin* at ¶ 14. Appellant victimizing multiple young children further justifies his lengthy sentence. See *State v. Hairston,* 10th Dist. No. 07AP–160, 2007–Ohio–5928, ¶ 57 (upholding a lengthy sentence for crimes involving multiple victims). See also *State v. McLemore,* 10th Dist. No. 01AP–497,

2001–Ohio–4270 (concluding that a victim's young age is a factor justifying a lengthy sentence). See also R.C. 2929.12(B) (stating that a court may base its sentence on any relevant factor indicating that an offender's conduct is more serious than conduct normally constituting the offense). Likewise, appellant alluded to being on probation previously, and he has not been successfully rehabilitated given his present sex offenses. This factor demonstrates appellant's recidivism and also justifies his lengthy sentence. See R.C. 2929.12(D); *Franklin* at ¶ 15. Lastly, appellant's prison terms are within the range authorized by statute. See R.C. 2929.14(A)(3). Appellant has not shown that defense counsel was ineffective for not challenging the sentence that the trial court imposed.

Appellant argues that defense counsel was ineffective for not challenging the constitutionality of S.B. 10's residency restrictions. Appellant is incorrect. The issue is not ripe for consideration because the trial court incarcerated appellant. See *State v. Gilfillan,* 10th Dist. No. 08AP–317, 2009–Ohio–1104, ¶ 117.

Appellant argues that defense counsel was ineffective for not asserting that retroactive application of S.B. 10 violates the federal and state constitutions. These constitutional challenges to S.B. 10 are pending before the Supreme Court of Ohio. See *Franklin* at ¶ 20. This court has not ruled concerning S.B. 10's retroactive application. Virtually every other appellate district in this state has rejected challenges to S.B. 10, however, based on retroactive or ex post facto constitutional challenges. See *Harrod v. State,* 5th Dist. No.2008CA0206, 2009–Ohio–4733, ¶ 18 (listing the cases from other appellate districts). And this court has held that a defendant lacks standing to even challenge S.B. 10 on direct appeal. See fn. 1 above. Given this state of the law, appellant has not demonstrated that constitutional challenges to S.B. 10's retroactive application would have led to a different result in the trial court. Thus, we conclude that defense counsel was not ineffective for failing to raise the constitutional challenges. For all these reasons, we overrule appellant's seventh assignment of error.

*State v. Douglas*, 2009 WL 486143, at *13-15.

Subsequently, in *State v. Williams*, 129 Ohio St.3d 344 (2011), the Ohio Supreme

Court held that application of Senate Bill 10 to criminal defendants whose crimes had been

23

committed prior to its effective date violated Ohio's ex post facto laws, as Senate Bill 10 changed Ohio's sexual offender statutes from remedial to punitive nature.  However, Petitioner was sentenced in January 2009, prior to the Ohio Supreme Court's decision in *Williams.*  Moreover, as noted by the state appellate court, during the time period at issue, every Ohio Court of Appeals had rejected Petitioner's argument herein.  Defense counsel is not deemed to have performed in a constitutionally ineffective manner by failing to anticipate this change in the law.  *See Cornell v. Jeffries,* No. 2:05-CV948, 2006 WL 2583300, at *20 (S.D. Ohio Sept. 7, 2006)(citing *United States v. Burgess,* 142 Fed.Appx. 232, unpublished, 2005 WL 1515327 (6th Cir. June 22, 2005)(counsel does not perform in a constitutionally ineffective manner by failing to anticipate the United States Supreme Court's decision in *Blakely v. Washington,* 544 U.S. 296 (2004))(other citations omitted)).  Additionally, the state appellate court concluded that the trial court did not violate state law by imposing maximum consecutive sentences. This Court defers to the state court's interpretation of its own laws.  *See Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988).  Further, nothing in the Constitution prohibits such a sentence.

Petitioner therefore has failed to establish the ineffective assistance of counsel.

**WHEREUPON**, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.**

## PROCEDURE ON OBJECTIONS

If any party objects to this *Report and Recommendation*, that party may, within fourteen (14) days, file and serve on all parties a motion for reconsideration by the Court,

specifically designating this *Report and Recommendation*, and the part thereof in question, as well as the basis for objection thereto.  28 U.S.C. § 636(b)(1) (B); Rule 72(b), Fed.R.Civ.P.

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court.  *Thomas v. Arn*, 474 U.S. 140, 150–52 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir.1981). *See also, Small v. Secretary of Health and Human Services,* 892 F.2d 15, 16 (2d Cir.1989).




s/Mark R. Abel
United States Magistrate Judge

25